# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANY ROBLES and PABLO SALGADO<br><br>    Plaintiffs<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>    Defendants | Case No.: |

## PLAINTIFFS' COMPLAINT

NOW COME the Plaintiffs, STEPHANY ROBLES and PABLO SALGADO, by their attorneys, VINKLER LAW OFFICES, LTD. and WAIS, VOGELSTEIN, FORMAN & OFFUTT, LLC (*pro hac vice* to be applied for), and complaining against the Defendant, THE UNITED STATES OF AMERICA, state as follows:

### I. INTRODUCTION AND PROCEDURAL HISTORY

1. The Plaintiffs, Stephany Robles and Pablo Salgado, are residents of Chicago, Illinois.

2. Julia Eckersley, M.D. ("Dr. Eckersley") is, and at all times relevant hereto was, a physician licensed to practice medicine under the laws of Illinois.

3. Dr. Eckersley is, and at all times relevant hereto was, a practicing physician, holding herself out to the public in general, and to Stephany Robles in particular, as a person who provides reasonably prudent and competent medical care to individuals in need thereof.

4. Danielle Kraessig, CNM ("CNM Kraessig") is, and at all times relevant hereto was, a certified nurse-midwife licensed to practice midwifery under the laws of Illinois.

5. CNM Kraessig is, and all times relevant hereto was, a practicing certified nurse-

1

midwife, holding herself out to the public in general, and to Stephany Robles in particular, as a person who provides reasonably prudent and competent nurse-midwife care to individuals in need thereof.

6. At all times relevant hereto, Dr. Eckersley and CNM Kraessig were acting as employees of PCC Community Wellness Center, located at 14 West Lake Street in Oak Park, Illinois, 60302 and were acting within the scope of their employment in their care and treatment of Plaintiff Stephany Robles.

7. PCC Community Wellness Center is registered as a not-for-profit corporation with the Office of the Illinois Secretary of State.

8. PCC Community Wellness Center, through its agents, servants and/or employees, provides medical care, including, but not limited to, obstetrical prenatal care, to individuals in need thereof, at several hospitals and clinics in and around Westside Chicago, including, PCC Salud Family Health Center, which is located at 5359 W. Fullerton Avenue, Chicago, Illinois 60639.

9. Pursuant to 42 U.S.C. § 254b, PCC Community Wellness Center is deemed a Health Center Program grantee.

10. Pursuant to 42. U.S.C. § 233(g)-(n), PCC Community Wellness Center is deemed a Public Health Service employee.

11. Accordingly, PCC Community Wellness Center, and its clinics, including PCC Salud Family Health Center, qualify as a Federally Qualified Health Center under Section 330 of the Public Health Services Act.

12. At all times relevant hereto, PCC Community Wellness Center employed Julia Eckersley, M.D. and Danielle Kraessig, CNM.

13. The Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C § 1346(b), permits persons to sue the government of the United States in federal court for money damages "for injury

or loss of property, or personal injury or death caused by the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

14. Based upon the foregoing, the Defendant, The United States of America, is liable for the torts of the employees of PCC Community Wellness Center, including Dr. Eckersley and CNM Kraessig, under the FTCA.

15. Pursuant to 28 U.S.C. § 2675(a), on or about June 19, 2017, an FTCA "Form 95" was served upon the United States Department of Health and Human Services to institute the administrative claims process for Stephany Robles and Pablo Salgado. On November 3, 2017, the United States Department of Health and Human Services issued its notice of final determination on Plaintiffs' administrative tort claims as required by 28 U.S.C. §§ 2401(b) and 2675(a) denying Plaintiffs' tort claims. Accordingly, all administrative remedies required by law have been exhausted prior to the filing of the instant matter.

## II. JURISDICTION

16. The Plaintiffs re-allege and incorporate by reference Paragraphs 1 – 15 of this Complaint as if fully stated herein.

17. Jurisdiction is proper in this Court because the FTCA grants exclusive jurisdiction to the federal courts to dispose of claims by individuals and corporations against the United States where the lawsuits seeks compensation "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omissions of any employee" of the United States where that employee acted in performance of his or her governmental duties if the same action in injury would impose liability on a private individual under the state law in similar circumstances.

18. Pursuant to 28 U.S.C. § 1402(b), venue is proper in the United States District Court

for the Northern District of Illinois as the acts and/or omissions complained of herein occurred in the Northern judicial district.

19. The FTCA provides that the law of the state where the act or omission occurred determines the liability of the United States.

### III. FACTS

20. Plaintiff Stephany Robles became pregnant in September of 2014.

21. Ms. Robles' prior obstetrical history included an elective termination in 2010 and a live birth in 2012.

22. On November 24, 2014, Ms. Robles presented to PCC Salud Family Health Center for her initial prenatal visit. She was approximately 8 weeks' gestation.

23. At the time of her initial presentation to PCC Salud Family Health Center, Ms. Robles came under the care of Dr. Eckersley.

24. On November 29, 2014, Ms. Robles underwent a first-trimester ultrasound that established an estimated date of delivery of July 7, 2015.

25. Ms. Robles subsequently had prenatal visits with Dr. Eckersley at PCC Salud Family Health Center at 10, 14, 22, 25, 28, 30, 36, and 37 weeks' gestation.

26. At her 18-week prenatal visit to PCC Salud Family Health Center, Ms. Robles was treated by CNM Kraessig.

27. On February 10, 2015, Ms. Robles underwent a 19-week sonogram at West Suburban Medical Center. These images were reviewed, however soft markers for Down syndrome were not obtained.

28. According to an American College of Obstetrics and Gynecology ("ACOG") Practice Bulletin that was applicable during Ms. Robles' prenatal care, and which had been adopted by the American Academy of Family Physicians ("AAFP"), all pregnant women, regardless of age,

4

should be offered aneuploidy screening and be fully informed of health care options including, prenatal screening or definitive testing via amniocentesis or chorionic villus sampling ("CVS"). Furthermore, and according to ACOG, this testing or screening should be performed prior to 20 weeks' gestation to allow patients all reproductive options including pregnancy termination. In the January 2007 ACOG Practice Bulletin, the Committee noted that 80% of Down syndrome fetuses were born to women under age 35. Therefore, the Committee concluded that limiting offered testing to women at the age of 35 would allow for only a 20% detection rate, and thus all women should be offered testing.

29. Likewise, American College of Medical Genetics ("ACMG") guidelines, which were published in 2009, and which were applicable at all times relevant hereto, stated, that "all women should have the option of invasive diagnostic testing for fetal aneuploidy by CVS, if available, or amniocentesis." This guideline further provided that if women do not avail themselves of definitive testing, they should be offered screening either by first-trimester or second-trimester screening options prior to 20 weeks' gestation. The guideline specifically stated, "In cases where women do not want information regarding fetal aneuploidy status, the reason for declining screening should be documented."

30. Similar to ACOG, AAFP, and ACMG, publications from the American College of Nurse-Midwives ("ACNM") recommend that all women, irrespective of age, be offered prenatal screening and diagnostic testing prior to 20 weeks' gestation. Similar recommendations were explicitly stated in *Varney's Midwifery*, the leading textbook in nurse-midwifery.

31. Despite the above, Dr. Eckersley and CNM Kraessig never discussed or offered Ms. Robles genetic screening or counseling for Down syndrome or other chromosomal abnormalities prior to 20 weeks' gestation.

32. Ms. Robles' medical records are devoid of any mention whatsoever of Ms. Robles

being offered and/or declining aneuploidy screening.

33. On June 23, 2015, Ms. Robles gave birth to her son X.S. at West Suburban Medical Center at 38.1 weeks' gestation.

34. X.S. was noted to have respiratory distress at 6 hours of life, and was subsequently transferred to Lurie Children's Hospital.

35. At Lurie Children's Hospital, X.S. was documented as having hypotonia and other stigmata of Down syndrome. Karotype testing was performed showing a 14;21 translocation, which results in 3 copies of chromosome 21, Trisomy 21, or Down syndrome.

36. Today, X.S. continues to suffer from the sequela of Down syndrome, including, but not limited to, atrial septal defect, global developmental delays in language, fine motor, gross motor, social/adaptive domains, and hypotonia.

## IV. COUNT I – MEDICAL NEGLIGENCE/WRONGFUL BIRTH

37. The Plaintiffs re-allege and incorporate by reference Paragraphs 1 – 36 of this Complaint as if fully stated herein.

38. The Defendant, The United States of America, acting by and/or through its employees, PCC Community Wellness Center, PCC Salud Family Health Center, Julia Eckersley, M.D. and Danielle Kraessig, CNM, owed to the Plaintiffs the duty to exercise that degree of care and skill that is ordinarily exercised by reasonably skilled practitioners of the medical arts and sciences specializing in the fields of Obstetrics and Gynecology, Family Practice Medicine, and/or Nurse Midwifery.

39. Notwithstanding that duty, The Defendant, The United States of America, acting by and/or through its employees, PCC Community Wellness Center, PCC Salud Family Health Center, Julia Eckersley, M.D. and Danielle Kraessig, CNM, breached its duty of reasonable care to the Plaintiffs and was negligent by:

6

    a. Carelessly and negligently failing to provide Stephany Robles with appropriate prenatal care;

    b. Carelessly and negligently failing to advise Stephany Robles of prenatal screening and genetic counseling for aneuploidy, Down syndrome and other chromosomal abnormalities;

    c. Carelessly and negligently failing to offer Stephany Robles prenatal screening;

    d. Carelessly and negligently failing to perform nuchal translucency screening during Stephany Robles first-trimester;

    e. Carelessly and negligently failing to offer Stephany Robles genetic counseling;

    f. Carelessly and negligently failing to offer Stephany Robles aneuploidy screening (i.e., screening for Down syndrome); and

    g. Carelessly and negligently failing to follow the recommendations and guidelines of the American College of Obstetricians and Gynecologists, the American College of Medical Genetics, the American Academy of Family Practice, and the American College of Nurse-Midwives, in their care and treatment of Stephany Robles as it pertains to prenatal screening and genetic counseling.

40. Had the Defendant, The United States of America, acting by and/or through its employees, PCC Community Wellness Center, PCC Salud Family Health Center, Julia Eckersley, M.D. and Danielle Kraessig, CNM, provided reasonable care to Stephany Robles, and offered Stephany Robles prenatal aneuploidy screening, diagnostic testing (i.e., CVS or amniocentesis),

7

and genetic counseling, Stephany Robles would have undergone such testing and counseling.

41. Had Stephany Robles undergone prenatal aneuploidy screening, diagnostic testing, and genetic counseling, such testing and counseling would have definitively revealed that Ms. Robles was carrying a fetus with Trisomy 21 or Down syndrome.

42. Had Stephany Robles known that X.S. was going to be born with Trisomy 21 or Down syndrome she would have made the difficult decision to electively terminate X.S. in accordance with the laws of Illinois.

43. Therefore, as a direct and proximate result of one or more of the foregoing careless and/or negligent acts or omissions of the Defendant, The United States of America, by and/or through its employees, PCC Community Wellness Center, PCC Salud Family Health Center, Julia Eckersley, M.D. and Danielle Kraessig, CNM, the Plaintiffs, Stephany Robles and Pablo Salgado, have suffered substantial injuries of a personal and pecuniary nature, including, but not limited to, the following:

    a. The Plaintiffs became obligated for medical and hospital expenses for Ms. Robles' pregnancy and the birth of X.S.;

    b. The Plaintiffs have and will incur extraordinary child rearing expenses during the minority of their child, X.S., who suffers from Down syndrome;

    c. The Plaintiffs have and will incur substantial medical and other care expenses during the minority of their child, X.S., who suffers from Down syndrome; and

    d. The Plaintiffs have suffered emotional distress as a result of X.S.'s birth and as a result of having to care for a child who is disabled as a result of Down syndrome.

44. In accordance with 735 ILCS 5/2-622, the Plaintiffs attach hereto and make it a part hereof the Affidavit of their attorney as Exhibit "A."

45. The medical records of Stephany Robles from PCC Salud Family Health Center, West Suburban Medical Center, and Lurie Children's Hospital have been reviewed by a physician specializing in the same area of health care as Julia Eckersley, M.D. and Danielle Kraessig, CNM, for more than six years, who is knowledgeable in the relevant issues involved in this case and is of the opinion that the Defendant, The United States of America, acting by and/or through its employees, PCC Community Wellness Center, PCC Salud Family Health Center, Julia Eckersley, M.D., and Danielle Kraessig, CNM, were negligent in the care and treatment of Plaintiff Stephany Robles, and that these negligent acts and/or omissions were the direct and proximate cause of Plaintiffs' injuries and damages. Attached hereto as Exhibit "B", "C" and "D", and incorporated herein by reference, are the reports of Jane Corteville, M.D., Kitty B. Carter-Wicker, M.D., and Pamela Kelly, C.N.M., M.S.

WHEREFORE, the Plaintiffs, request judgment against the Defendant, The United States of America, in an amount exceeding $100,000.00, together with the costs of this action.

Respectfully submitted,

**VINKLER LAW OFFICES, LTD.**

Jerome A. Vinkler, Esquire
7045 Veterans Blvd., Suite A2
Burr Ridge, IL 60527
(630) 655-9545
*Attorney for Plaintiffs*

9

WAIS, VOGELSTEIN, FORMAN & OFFUTT, LLC

*[signature]*

Keith D. Forman (*pro hac vice to be submitted*)
Jason B. Penn (*pro hac vice to be submitted*)
Myles J. Poster (*pro hac vice to be submitted*)
1829 Reisterstown Road, Suite 425
Baltimore, Maryland 21208
(410) 998-3600
***Pro Hac Vice Attorneys for Plaintiffs***